## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 90; KENNETH KING and FRANK J. HALLORAN, JR., as Union Trustee of the Benefit Plan; and JAMES MALONE, as Union Trustee of the Pension Plan; and JAMES A. FAINER, BREAMAND GAMBERDELLA and MAUREEN GARDNER, as Participants of the Benefit Plan and Pension Plan, Plaintiffs, | CIVIL ACTION NO. 3:06cv2 (SRU) |
| v. | |
| NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, CONNECTICUT CHAPTER, INC., and MICHAEL R. MOCONYI, as Association Trustee of the Benefit Plan and Pension Plan, Defendants. | |

## FINDINGS OF FACT and CONCLUSIONS OF LAW

International Brotherhood of Electrical Workers, Local 90, several union trustees of the Local 90 pension and benefit plans, and several participants of the pension and benefit plans (collectively "Local 90") filed a two-count complaint against the National Electrical Contractors Association, Connecticut Chapter ("NECA"), and Michael R. Moconyi, a NECA trustee of the Local 90 pension and benefit plans (collectively "defendants"), seeking a permanent injunction and monetary damages against NECA and Moconyi. In their complaint, Local 90 alleges that the defendants breached their fiduciary duties to the plans in several respects. On May 2, July 3, and August 15-16 2007, the parties tried the case to the court. My findings of fact and conclusions of law are set forth below. *See* Fed. R. Civ. P. 52.

## I.      Findings of Fact

A.    The Parties

NECA is a multi-employer organization that represents 32 members, all of whom are contractors in the electrical industry. Transcript of the Bench Trial held May 2, 2007, July 3, 2007, and August 15-16 2007 at 332 ("Tr."). NECA engages in collective bargaining negotiations with International Brotherhood of Electrical Workers local unions, including Local 90. Tr. at 242. Moconyi is employed as NECA's Executive Director, and has served in that capacity since 1988. Tr. At 331, 333. Moconyi receives a salary and employee fringe benefits from NECA, but is not directly employed by any of NECA's members. Tr. at 334. Local 90 is a labor union that represents electrical workers. Tr. at 336.

B.    The Pension and Benefit Plans

NECA and Local 90 established pension and benefit plans through a collective bargaining agreement. Tr. At 200. The plans both fall within Section 3 of ERISA, 29 U.S.C. § 1002. Tr. at 10-11. Meetings of the benefit plan trustees are held once a month, and meetings of the pension plan trustees are held once every other month or once a quarter. *Id.*

1.    *Benefit Plan Provisions*

Local 90 alleges that the defendants breached several terms of the benefit and pension plans. Article IV, Section 4.01 of the Agreement and Declaration of Trust of the Benefit Plan ("Benefit Plan") states:

> The Trustees shall consist of six (6) Trustees who, collectively, shall
> constitute a Board of Trustees. Any transaction, decision or other act
> concerning the operation or administration of the Trust Fund shall be made by
> the Board of Trustees unless the Board of Trustees, by resolution and within
> the limits specified herein, shall delegate the duty to another authorized
> person. The Union and the Association shall appoint the individuals who

shall serve as Trustees and who shall constitute the Board of Trustees in the following manner:

(a) The Union shall appoint three (3) individuals to serve as Trustees. Each individual so appointed shall be a member in good standing of the Union and shall continue to serve as a Trustee at the pleasure of the Union.

(b) The Association shall appoint three (3) individuals to serve as Trustees. Each individual so appointed shall be actively employed by a contributing Employer and shall continue to serve as a Trustee at the pleasure of the Association.

Pl. Ex. B.

Article IV, Section 4.07 of the Benefit Plan, as amended on October 21, 1982, states that a quorum for the transaction of business shall consist of at least one (1) Association Trustee and one (1) Union Trustee. Pl. Ex. B.

Article IV, Section 4.04 of the Benefit Plan states:

Decisions of the Board of Trustees shall be made by the majority of concurring votes cast by the Trustees present and voting at any meeting. Each Trustee appointed by the Union shall have one (1) vote on any act or acts brought to a vote by the Board of Trustees. Each Trustee appointed by the Association shall have one (1) vote on any act or acts brought to a vote by the Board of Trustees. If one Union Trustee is absent, the remaining Union Trustees shall have one and one half (1-1/2) votes. If two Union Trustees are absent, the remaining Union Trustee shall have three (3) votes. If one Employer Trustee is absent, the remaining Employer Trustees shall each have one and one half (1-1/2) votes. If two Employer Trustees are absent, the remaining Employer Trustee shall have three (3) votes.

Pl. Ex. B.

2.     *Pension Plan Provisions*

Article IV, Section 4.10 of the Agreement and Declaration of Trust of the Pension Plan ("Pension Plan") states that "[a] vacancy on the Board of Trustees shall be filled within thirty (30) days after the date such vacancy occurs." Pl. Ex. A. Article IV, Section 4.01 of the Pension

Plan states:

> The Trustees shall consist of six (6) Trustees who, collectively, shall constitute a Board of Trustees. Any transaction, decision or other act concerning the operation or administration of the Trust Fund shall be made by the Board of Trustees unless the Board of Trustees, by resolution and within the limits specified herein, shall delegate the duty to another authorized person. The Union and the Association shall appoint the individuals who shall serve as Trustees and who shall constitute the Board of Trustees in the following manner:
>
> (a) The Union shall appoint three (3) individuals to serve as Trustees. Each individual so appointed shall be a member in good standing of the Union and shall continue to serve as a Trustee at the pleasure of the Union.
>
> (b) The Association shall appoint three (3) individuals to serve as Trustees. Each individual so appointed shall be actively employed by a contributing Employer and shall continue to serve as a Trustee at the pleasure of the Association.

Pl. Ex. A.

Article IV, Section 4.07 of the Pension Plan states that a quorum for the transaction of business shall consist of at least two (2) Association Trustees and two (2) Union Trustees. Pl. Ex. A. Article IV, Section 4.04 of the Pension Plan states:

> Decisions of the Board of Trustees shall be made by the majority of concurring votes cast by the Trustees present and voting at any meeting. Each Trustee appointed by the Union shall have one (1) vote on any act or acts brought to a vote by the Board of Trustees. Each Trustee appointed by the Association shall have one (1) vote on any act or acts brought to a vote by the Board of Trustees. If a Union Trustee is absent, the remaining Union Trustees shall have one and one-half (1-1/2) votes. If an Employer Trustee is absent, the remaining Employer Trustees shall have one and one-half (1-1/2) votes.

Pl. Ex. A.

C.  <u>The Appointment of NECA Officers and Trustees, and Attendance of NECA Trustees at Plan Meetings</u>

-4-

On July 1, 1988, NECA appointed Moconyi as an Employer Trustee of the pension and benefit plans. Def. Ex. 1. Since then, Moconyi has continuously served as a trustee for the plans. Tr. at 337.

During the relevant time periods, Moconyi and Michael McPhee, NECA's president, were NECA's only officers. NECA's bylaws provide that the Board of Directors shall meet regularly and shall appoint NECA's officers, Pl. Ex. C., but NECA has had no Board of Directors for the past five years, and has conducted no monitoring or oversight of Moconyi's actions during that time period. Tr. at 96. NECA has not had any elections for officers from 1999 through February 2007. Tr. at 244.

Since July 2000, Moconyi was often the only association trustee who attended and voted at pension and benefit plan meetings. Pl. Ex. XX. Although there were, on occasion, other appointed trustees, those trustees often failed to attend the meetings and failed to cast votes. *Id*. Instead, Moconyi regularly cast votes on behalf of the other absent, and sometimes nonexistant trustees. *Id*. NECA asserts that it did not appoint the required number of trustees because none of its members wanted to serve as trustees. Tr. at 103.

D.       The Plans' Economic Shortfall, the Deadlock, and the Interim Agreement

At some point before 2003, the Segal Company, an outside actuarial consultant, advised the pension and benefit plan trustees that the plans were in distressed financial condition and that the plans needed additional contributions in order to stay solvent and to pay benefits to their participants and beneficiaries. Pl. Ex. R, S, Tr. at 57, 67.

On May 31, 2005, the collective bargaining agreement between NECA and Local 90 was set to expire. Tr. at 202-03. Before the expiration of the agreement, NECA and Local 90 began

to negotiate a wage increase and increased employer contributions to the plans to keep them solvent. Tr. at 202-03. The parties could not reach an agreement by the deadline, however, and Local 90 went on strike. Tr. at 151.

In July 2005, Local 90 entered into interim agreements directly with 23 NECA members so that those members could continue to provide electrical contracting services while Local 90 and NECA negotiated a new collective bargaining agreement. Def. Ex. 9, Pl. Ex. K, Tr. at 203-04. NECA was not a party to the interim agreements. Tr. at 151, 203. The interim agreements provided for a $1.60 per hour wage increase. Tr. at 207, Pl. Ex. K. After the interim agreements were drafted and executed by Local 90 and the participating employers, Local 90 voted, at a union meeting, to allocate $.50 of the $1.60 increase in hourly wages to the benefit plan, and $.20 to the benefit plan. Tr. at 207. Local 90 did not, however, redraft and reexecute the interim agreements, but instead sent letters to the participating employers informing them of the vote, and instructing them of the new contribution levels to the respective plans. Def. Ex. 14.

The pension and benefit plans subsequently held a meeting on September 8, 2005 at which Moconyi moved, and voted, to prevent the plans from accepting the additional contributions under the interim agreements. Pl. Ex. N. Although Moconyi was the only NECA trustee present, he cast all three NECA votes against accepting the contributions. Pl. Ex. N, A. The Local 90 trustees cast all three of their votes in favor of accepting the additional plan contributions, so the parties were deadlocked. Moconyi testified that he voted against accepting the contributions because the original collective bargaining agreement, as opposed to the interim agreements, provided that the funds were only permitted to accept contributions based on the rates identified in a collective bargaining agreement between NECA and Local 90, and that the

additional contributions would raise the contribution rates above the prescribed level. Tr. at 360.

On September 13, 2005, Moconyi sent letters to NECA members advising them not to make the additional contributions to the plans, and advising that the members could be sued for breach of the Interim Agreement if they did contribute. Pl. Ex. U. Local 90 sent a letter in response indicating that the contractors would not be sued if they paid the additional allocations. Pl. Ex. V. On September 30, 2005, Moconyi sent a letter to Insurance Programmers, Inc., the third-party administrator of the pension and benefit funds ("Insurance Programmers"), requesting that it not allow excess payments to be made to the Plans, but that the additional funds be placed in escrow. Pl. Ex. W. In practice, some of the employers made the additional contributions to the funds and some did not.

On October 21, 2005, the pension and benefit plans met again to discuss the additional funds under the interim agreement. Moconyi was again the only NECA trustee present at the meeting, and he again cast all three votes against accepting the additional contributions to the plan. Pl. Ex. DD, Tr. at 159. The parties then went to arbitration to resolve the second deadlock. Def. Ex. 27.[1] The question presented to the arbitrator was whether Insurance Programmers should be instructed to accept only the contributions that are "outlined in the Collective Bargaining Agreement between" Local 90 and NECA, or whether Insurance Programmers should also accept the additional contributions. Stipulation Re: Arbitrator's Decision. The arbitrator decided that the funds had properly accepted the additional contributions pursuant to the interim agreements, and that the Funds should not seek the money from the contractors that did not

---

[1] The parties mutually agreed to exclude the arbitrator's decision and the arbitration proceedings from the evidence in this case, but did reach a stipulation concerning the arbitration.

provide the additional contributions.  Tr. at 400.

## II.     Conclusions of Law

In its complaint, Local 90 alleges that NECA and Moconyi, breached their fiduciary

duties to the plans under ERISA.  NECA and Moconyi counter that Local 90 has not exhausted

its administrative remedies, that they did not breach any fiduciary duty, and that, even if they did

breach their fiduciary duties to the plans, any breach did not cause Local 90 any financial

damages.  In addition, NECA contends that it is not a fiduciary under ERISA.  I address those

arguments in turn.

### A.     Should Local 90's Claims Be Dismissed for Failure to Exhaust Administrative Remedies?

NECA and Moconyi assert that Local 90's claims should be dismissed for failure to

exhaust administrative remedies.  I begin by noting that claims for breach of fiduciary duty

generally need not be administratively exhausted.[2]  *See Smith v. Sydnor*, 184 F.3d 356, 365 (4th

Cir. 1999) ("We hold that the judicially created exhaustion requirement does not apply to a claim

for breach of fiduciary duty as defined in ERISA."); *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311,

---

[2] I note that the Second Circuit has not expressly held as much, but "recent developments in the law of this circuit indicate" that "the question of whether [breach of fiduciary duty] claims are subject to the administrative exhaustion requirement remains open.  Decisions from six other circuits have held that the administrative exhaustion requirement applies to plan-based ERISA claims – that is, claims relating to violations of the terms or provisions of the plan at issue – but not to statutory ERISA claims – that is, claims that arise from a violation of the statute itself rather than of a plan.  The Seventh and Eleventh Circuits, however, have declined to distinguish between statutory and plan-based ERISA claims, and instead require exhaustion regardless of the nature of the claim."  *AMA v. United Healthcare Corp.*, 2007 U.S. Dist. LEXIS 44196, *45-47 (S.D.N.Y. 2007) (internal citations omitted).  The *AMA* Court did not apply the exhaustion requirement to the statutory claim in that case, and noted that district courts within the Second Circuit have followed the same approach.  *Id*. at *47-48.  I agree with the *AMA* Court and decline to require exhaustion here.

313 (5th Cir. 2006) (*per curiam*) (same); *Molnar v. Wibbelt*, 789 F.2d 244, 250 n.3 (3d Cir. 1986).[3]

The defendants' argument that Local 90 failed to exhaust the fiduciary duty claims derives from its assertion that Local 90 was contractually obligated to exhaust its administrative remedies. NECA and Moconyi cite Section 4.05 of the Pension and Benefit Plan, which states:

> In the event of a deadlock between the votes cast by the Trustees . . . they either shall agree on the selection of an impartial umpire or upon the petition of either group, one shall be appointed by the United States District Court. . . . The impartial umpire shall review the matter in dispute and shall thereupon make a decision. The parties hereto agree that the decision of said umpire shall be final, valid and enforceable in accordance with its terms and shall be deemed adopted by the board of trustees.

Pl. Ex. A, B ("deadlock clause"). In short, NECA argues that the issues upon which Local 90 rests its fiduciary duty claims are "matters of fund administration" and should have been brought before the board of trustees in the first instance. Then, if the board deadlocked on the issues, Local 90 should have brought the issues before an arbitrator.

There is nothing in the deadlock clause, however, that would require Local 90 to exhaust its fiduciary duty claims. First, there was no deadlock over the fiduciary duty claims. Second, it would be somewhat strange to require Local 90 to present its breach of fiduciary duty claims against NECA and Moconyi to NECA and Moconyi, in the first instance, so Moconyi and the other NECA trustees could vote on whether they were guilty of the claimed breaches.

The defendants rely heavily on *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76 (2d

---

[3] A breach of fiduciary duty claim does need to be exhausted if the court determines that the claim is, in actuality, a claim for benefits disguised as a claim for breach of fiduciary duty. *Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335, *10 (5th Cir. 2006) (*en banc*). It is clear in this case, however, that Local 90's breach of fiduciary duty claims are not disguised claims for benefits.

Cir. 1986). In that case, the parties had deadlocked on a vote about whether to seek certain plan contributions from employers. The plan provided that parties must arbitrate any deadlocks before pursuing judicial remedies. Without arbitrating the deadlock, the plaintiffs brought a breach-of-fiduciary-duty claim based upon the deadlocked vote, and the Second Circuit held that their claim was not exhausted. This case is different from *Alfarone*, however, because Local 90's breach-of-fiduciary-duty claims are not claims for contributions, and because the parties never deadlocked on most of the issues underlying Local 90's claims.

In sum, the deadlock clause does not compel Local 90 to exhaust the breach of fiduciary duty claims it has brought here.

B.      Was NECA an ERISA Fiduciary?

NECA contends that it is not an ERISA fiduciary. ERISA provides that:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 USCS § 1105(c)(1)(B)].

29 U.S.C. § 1002(21). NECA asserts that it is not a fiduciary because it merely appoints and removes trustees to the plans, and that the power to appoint and remove trustees is not "discretionary authority or discretionary control respecting management of such plan." In support of its decision, NECA cites *Beauchem v. Rockford Products Corp.*, 2003 U.S. Dist. LEXIS 5546 (N.D. Ill. 2003).

The vast weight of authority, and the better-reasoned approach, however, is that an entity "is a fiduciary within the meaning of ERISA, and thus subject to the fiduciary standard of care, [if] it appoints and removes the members of the administrative committee that administers the . . . plan." *Hickman v. Tosco Corp.*, 840 F. Supp. 564, 566 (8th Cir. 1988); *see also Whitfield v. Tomasso*, 682 F. Supp. 1287, 1305 (E.D.N.Y. 1988) ("[b]y virtue of its authority to appoint and remove the union trustees, and by effectively controlling the selection of employer trustees, defendant Allied both had and exercised discretionary authority and control respecting management of the Fund."); *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998) ("It is by now well-established that the power to appoint plan trustees confers fiduciary status") (citing 29 C.F.R. § 2509.75-8 at D-4; *Licensed Div. Dist. No. 1 MEBA/NMU, AFL-CIO v. DeFries*, 943 F.2d 474, 477-78 (4th Cir. 1991); *Mobile, Ala.-Pensacola, Fla. Bldg. and Constr. Trades Council v. Daugherty*, 684 F. Supp. 270, 275 (S.D. Ala. 1988)).  NECA's fiduciary obligations are, of course, limited to "those aspects of the plan over which [it] exercises authority or control." *Sommers Drug Stores v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986).  But NECA is certainly an ERISA fiduciary to the extent it exercised authority and control over the appointment and removal of trustees to the plans.

C.  <u>Did NECA Breach its Fiduciary Duty to the Plans?</u>

Local 90 alleges that NECA breached its fiduciary duty because it (1) failed to appoint the appropriate number of trustees, and (2) failed to monitor its trustees.

1.  *Failure to Appoint Trustees*

The Agreement and Declaration of Trust for both plans provides that "[t]he Union and the Association shall appoint the individuals who shall serve as Trustees and who shall constitute

the Board of Trustees in the following manner . . . .  The Association shall appoint three (3)

individuals to serve as Trustees."  Pl. Ex. B.  Article IV, Section 4.10 of the Agreement and

Declaration of Trust of both plans also states "[a] vacancy on the Board of Trustees shall be filled

within thirty (30) days after the date such vacancy occurs."  Pl. Ex. A, B.  As such, NECA had a

fiduciary duty to appoint three trustees, and had the duty to fill vacancies within thirty days.

NECA does not dispute that it failed to timely appoint the required number of trustees to the

plans during certain periods of time.  *See* Pl. Ex. WW, XX.  As such, NECA breached its

fiduciary duty to appoint three trustees to the plans.[4]

NECA contends that it should nevertheless not be held liable for any breach of fiduciary

duty because (1) the failure to appoint trustees did not breach its fiduciary duty to appoint

employer trustees because, by statute, on any Taft-Hartley trust fund board of trustees,

"employees and employers [must be] equally represented in the administration of such fund."  29

U.S.C. § 186, (2) NECA made an attempt to appoint three trustees but none of its members were

willing to serve, (3) fund counsel permitted the funds to conduct business in the absence of three

employer trustees, (4) the funds could not cease conducting business during the periods in which

less than three trustees were appointed, and (5) it was the general practice to conduct meetings

with less than three employer trustees appointed.  Those contentions may very well be factually

accurate, but are all beside the point because those contentions do not absolve NECA of its duty

---

[4] NECA did, on occasion, appoint trustees other than Moconyi.  As evidenced by their abysmal attendance record at plan meetings, those additional trustees failed to meaningfully participate in the plans.  Certainly the duty to appoint trustees necessarily entails the duty to appoint competent trustees who reasonably attempt to perform their duties as fiduciaries.  *See Liss*, 991 F. Supp. at 331 ("failure to . . . remove non-performing fiduciaries thus renders the appointing fiduciary jointly and severally liable.").

to appoint three trustees to each plan, nor do they prevent NECA from breaching that duty, nor do they render any breach harmless.

2.     *Failure to Monitor Trustees*

Local 90's failure-to-monitor claim is more involved. It is well established that "the limited power to appoint and remove trustees renders" the ERISA fiduciary "liable for the breaches those trustees committed. The power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance." *Liss*, 991 F. Supp. at 311. The ongoing responsibilities of an ERISA fiduciary who has appointed trustees requires that, "at reasonable intervals the performance of trustees and other fiduciaries should be reviewed . . . in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." *Id.* (citing 29 C.F.R. § 2509.75-8 at FR-17; *Leigh v. Engle*, 727 F.2d 113, 134-35 (7th Cir. 1984); *Atwood v. Burlington Indus. Equity, Inc.*, 1994 U.S. Dist. LEXIS 12347 (M.D.N.C. 1994)). A fiduciary's obligation to monitor the trustees it appoints "thus includes the obligation to ensure that the appointees are performing their fiduciary obligations." *Id.*

In addition to the duty to monitor, the fiduciary also has "the duty to take action upon discovery that the appointed fiduciaries are not performing properly." *Id.*; *see also Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 641 (W.D. Wisc. 1979) (failure to appoint new trustees constitutes breach of fiduciary duty). "A failure to monitor appointees and to remove non-performing fiduciaries thus renders the appointing fiduciary jointly and severally liable for the appointed fiduciaries' breaches." *Id.* (citing *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) (co-fiduciaries jointly and severally liable for fiduciary

-13-

breaches)); 29 U.S.C. § 1105(a). Thus, to the extent Moconyi, or any of the other trustees, breached a fiduciary duty, NECA is liable for the breach.

NECA argues that it is not liable for any breaches of the appointed trustees because it was not "on notice of possible misadventure[s] by their appointees." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996). Indeed, a fiduciary is liable for breaches if it is on notice of the breach and fails to remediate. But the ongoing responsibilities of an ERISA fiduciary who has appointed trustees also requires that, at reasonable intervals, the fiduciary review the performance of the trustees it appoints to ensure that the trustees' performance complies with the terms of the plan and the relevant statutory standards. *Liss*, 991 F. Supp. at 311. In this case, NECA failed to monitor and replace trustees who continuously failed to fulfill their duties as trustees to the plans, including reasonable attendance at plan meetings and reasonable efforts to cast votes on plan issues. NECA also failed to monitor and remove Moconyi for the breaches of his fiduciary duties to the plans, and for his ineligibility to serve as a plan trustee. NECA had no system to monitor its trustees; indeed the record shows that it did not monitor its trustees in any way.[5] NECA does not argue otherwise.

Because NECA failed to conduct reasonable (or any) assessments of its trustees' performance, it is liable for those breaches, which include Moconyi's breaches (as set forth below), and the breaches of the other NECA trustees who utterly failed in their responsibilities as trustees.

D.    Did Moconyi Breach His Fiduciary Duty to the Plans?

---

[5] Moreover, to the extent NECA monitored its trustees, NECA's internal structural deficiencies rendered the monitoring ineffective. NECA had no board of directors, so Moconyi (along with McPhee) would have effectively been monitoring himself.

Section 1104 of Title 29 of the United States Code provides for the prudent man standard of care for ERISA fiduciaries:

> (a) Prudent man standard of care.
>
> (1) Subject to sections 403(c) and (d), 4042, and 4044 [29 USCS §§ 1103(c), (d), 1342, 1344], a *fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries* and –
>
>> (A)   for the exclusive purpose of:
>>
>>> (i)   providing benefits to participants and their beneficiaries; and
>>>
>>> (ii)   defraying reasonable expenses of administering the plan;
>>
>> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>>
>> (C)   by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>>
>> (D)   *in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.*

29 U.S.C. § 1104 (emphasis added).

Local 90 asserts that Moconyi breached his fiduciary duty to the plans in two ways: (a) As a procedural matter, Moconyi failed to comply with the trust agreements by voting on behalf of absent and nonexistent trustees, and representing NECA as the lone NECA trustee; (b) As a substantive matter, Moconyi did not discharge his duties solely in the interest of the plan and its participants when he voted against the acceptance of the additional funds under the interim

-15-

agreement and when he wrote letters to NECA members warning them about potential legal consequences of making interim contributions to the plans.

1. *Procedural Violations – Voting on Behalf of Absent and Nonexistent Trustees, and Representing NECA in the Absence of Sufficient Trustees Required for a Quorum*

Local 90 asserts that Moconyi breached his fiduciary duty to the pension plan by representing NECA during pension plan meetings at which he was the only NECA trustee present. Indeed, Article IV, Section 4.07 of the Pension Plan states that a quorum for the transaction of business shall consist of at least two Association Trustees and two Union Trustees. Pl. Ex. A.[6] It is unclear, however, that Moconyi personally violated the Pension Plan's quorum clause. To the extent Local 90 asserts that the quorum clause was violated because NECA lacked a sufficient number of appointed trustees, NECA, as an organization, would have caused the violation. To the extent Local 90 asserts that the quorum clause was violated because NECA trustees, other than Moconyi, failed to attend the meetings, the absent trustees caused the violation. To the extent Local 90 asserts that the quorum clause was violated because meetings were conducted in the absence of the appropriate number of trustees, its own trustees, as well Moconyi, participated in and facilitated those meetings, and were thus equally responsible for any resulting violation. In sum, Moconyi did not personally breach the quorum clause of the Pension Plan.

Local 90 also asserts that Moconyi breached his fiduciary duty to the pension plan by casting all three NECA votes at a number of meetings. Indeed, Article IV, Section 4.04 of the

---

[6] The Benefit Plan, as opposed to the Pension Plan, requires only one NECA trustee for a quorum. Pl. Ex. B. Local 90 does not allege that Moconyi violated the quorum clause of the Benefit Plan.

-16-

Agreement and Declaration of Trust of the Pension Plan states:

> Decisions of the Board of Trustees shall be made by the majority of
> concurring votes cast by the Trustees present and voting at any meeting.
> Each Trustee appointed by the Union shall have one (1) vote on any act or
> acts brought to a vote by the Board of Trustees.  Each Trustee appointed by
> the Association shall have one (1) vote on any act or acts brought to a vote by
> the Board of Trustees.  If a Union Trustee is absent, the remaining Union
> Trustees shall have one and one-half (1-1/2) votes.  If an Employer Trustee is
> absent, the remaining Employer Trustees shall have one and one-half (1-1/2)
> votes.

Pl. Ex. A.  Because Moconyi frequently cast all three votes on NECA's behalf, Moconyi failed to

comply with Section 4.07 of the pension plan trust agreement, and he thus breached his fiduciary

duty in that respect.[7]

Local 90 also argues that Moconyi breached his fiduciary duty by casting votes without

consulting the other trustees.  Although the Trust documents expressly permit present trustees to

cast votes on behalf of absent trustees, nothing in the trust documents require the present trustees

to consult with the other trustees before voting on their behalf.  The fact that NECA trustees

other than Moconyi may or may not have breached their duties by failing to attend plan

meetings,[8] and the fact that NECA failed to appoint the appropriate number of trustees in a

timely fashion are not related to whether Moconyi has breached a duty by not consulting with

those absent trustees.  As such, Moconyi did not breach his fiduciary duty by not consulting with

absent trustees.

Finally, Local 90 argues that Moconyi breached his fiduciary duty to both plans by

---

[7] The Benefit Plan, as opposed to the pension plan, allows a trustee to cast all three
NECA votes.  Pl. Ex. B.  As such, Moconyi did not violate the Benefit Plan's terms in that
respect.

[8] Local 90 has not sued trustees other than Moconyi for breach of fiduciary duty.

occasionally casting votes on behalf of nonexistent trustees. Indeed, there is some textual

support for Local 90's contention. The plans provide that "*[e]ach Trustee appointed by the*

*Association* shall have one (1) vote on any act or acts brought to a vote by the Board of

Trustees," and that, "*[i]f an Employer Trustee is absent*, the remaining Employer Trustees shall,"

in effect, be given the absent trustee's votes. The implication of the text of the absentee voting

clause assumes that the trustee exists, but is merely absent from the meeting. The issue is

somewhat complex, however, because nothing in the agreement expressly prohibits (or permits)

the practice followed by Moconyi. I nevertheless need not decide the issue because, given the

other breaches in this case, and for reasons set below, a holding that Moconyi improperly cast

votes on behalf of nonexistent trustees would not change the relief to which Local 90 is

otherwise entitled.

        2.      *Substantive Violations – Moconyi's Votes Against Accepting the*
                  *Contributions and His Letters to NECA and the Insurance Programmers*

      As previously stated, an ERISA fiduciary "shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries," but also "in accordance with the

documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1). Local 90 argues that

Moconyi's substantive vote against the plans' acceptance of the additional contributions

constituted a breach of Moconyi's duty to the plans, given the fact that the plans were in serious

financial peril. Local 90 argues further that Moconyi's intention, by voting against accepting the

contributions, was to place the plans into greater financial peril thereby strengthening NECA's

position in the ongoing collective bargaining negotiations.

      Moconyi counters that his vote was reasonable because the trusts' acceptance of the

additional contributions would have violated section 302(c)(5)(B)[9] of the Labor and Management

Relations Act, and Section 7.05 of the trust agreements.  Section 7.05 of the trust agreements

provides that "[n]o Employer shall make contributions to the Pension Fund *nor shall the Trustees*

*accept* any contributions by an Employer unless the Employer has entered into and signed a

written agreement with the Union . . . requiring such Employer to make contributions to the

Pension Fund on behalf of its Employees."  Pl. Ex. A, B (emphasis added).[10]  Moconyi asserts

that he voted against accepting the contributions because the interim agreement did not satisfy

the "writing" requirements under Section 7.05 and under LMRA § 302(c)(5)(B).  Specifically,

Moconyi argues that the interim agreement provided only for a $1.60 increase in "straight time"

wages, and did not specify that the employer deposit $.50 and $.20 of the $1.60 increase into the

funds.  *See* Pl. Ex. K.

The interim agreement did not, in fact, provide specifics with respect to the additional

contributions to the funds, presumably because the agreements were written and executed before

Local 90 had voted to increase the contributions.  The interim agreements provided only that

"[i]n consideration of its employees continuing to work in the absence of a Local collective

bargaining agreement, the Employer hereby agrees to pay the sum of an additional $1.60 at the

straight time wages, and at the appropriate overtime differentials, for all hours worked or paid in

absence of a Local 90 collective bargaining agreement with NECA."  Pl. Ex. K.  Subsequent to

---

[9] Moconyi's argument with respect to the Labor and Management Relations Act is a different question that I need not address here because I hold that Moconyi's vote was cast in accordance with plan documents and the interim agreements.

[10] Although the collective bargaining agreement had expired, this term was still in effect because the interim agreement "adopt[ed] all terms and conditions of the successor Agreement between" Local 90 and NECA.  Pl. Ex. K.

the execution of the interim agreements, Local 90 voted, at a union meeting, to allocate a portion of the $1.60 increase in straight time wages to the plans. Local 90 did not, however, redraft and reexecute the interim agreements to include a new clause, but instead sent a letter to contractors stating that "[a]t the regular monthly meeting . . . a vote was taken by the members in attendance to increase the health and welfare contribution by .50 cents [sic] and to increase the pension contribution by .20 cents [sic]. Effective October 1, 2005 the health and welfare contribution will be $7.22 and the pension contribution will be $3.85." Def. Ex. 14. Because the agreement was not reduced to writing and executed by the employers and Local 90, Moconyi reasonably believed that Section 7.05 of the trust agreements prevented the plan from accepting the funds. Pl. Ex. A, B ("No Employer shall make contributions to the . . . Fund[s] nor shall the Trustees accept any contributions by an Employer unless the Employer has entered into and signed a written agreement with the Union requiring such Employer to make contributions to the . . . Fund[s]."). Because Moconyi's vote against the plans accepting the funds was reasonably based upon Section 7.05 of the Trust Agreement, he did not breach his fiduciary duty in casting it.

Local 90 also argues that Moconyi breached his fiduciary duty to the plan by sending NECA members a letter warning them of the legal ramifications of contributing to the funds in the absence of a specific written agreement, and writing a letter to Insurance Programmers instructing it not to accept the additional contributions.

An ERISA fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104. Under the "two-hat" rule, however, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as

a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Local 90 contends that the employers may have interpreted the letter to have been written in Moconyi's fiduciary capacity as plan trustee. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). There could be no confusion, however, that Moconyi was writing the letter in his capacity as NECA's executive director. Other than the fact that the letter discusses the plans, the letter otherwise contains no language that either states or implies that Moconyi wrote the letter in his capacity as trustee. To the contrary, the language of the letter, written on NECA letterhead, implies that he wrote it in his capacity as NECA's executive director. Def. Ex. 16. ("*we* suggest that you consult with legal counsel should you desire to make any payment that is not clearly spelled out in the Interim Agreement or in the prior collective bargaining agreement with Local 90 referenced in the Interim Agreement.") (emphasis added). Indeed, Moconyi's employment as NECA's executive director presumably *required* him to keep his members informed about the plans and the collective bargaining process.

Even if Moconyi wrote the letter in his capacity as plan trustee, which I find he did not, the letter did not cause any harm because it did not direct the employers not to contribute to the funds. To the contrary, it only encouraged NECA members to consult legal counsel. Def. Ex. 16. Moreover, several of the participating employers testified at the hearing that they did not make the allocations because the interim agreement instructed only that they increase straight time wages, not because Moconyi had warned them to consult outside legal counsel. In short, because Moconyi wrote the letter in his capacity as NECA's executive director, and because the letter did not direct the employers not to contribute the additional allocation from the straight

time wage increase to the funds, Moconyi did not breach his fiduciary duty by sending the letter.

Moconyi's letter to Insurance Programmers, instructing that firm not to accept the additional contributions, presents a different scenario because Moconyi wrote the letter in his capacity as a trustee to the plans. The letter states:

> As a Trustee of the [Local 90 pension and benefit funds], I am very concerned about the propriety of IBEW Local 90's actions in increasing the health & welfare contributions by .50 cents [sic] and the pension contribution by .20 cents [sic], in that these payments are not authorized under any collective bargaining agreement by and between [NECA and Local 90]. Accordingly, I believe that it would be prudent that, rather than allowing any excess payments to be made into the Funds, which payments may then have to be removed, any monies received by your company on behalf of the Funds which are above and beyond those amounts currently authorized, be placed in escrow, pending a binding resolution by an appropriate and binding resolution of the Trustees of the Funds.

Pl. Ex. W. Still, I need not determine whether Moconyi breached his fiduciary duty by writing the letter to Insurance Programmers because the letter did not cause Insurance Programmers to place the funds in escrow. At trial, Diane Klobukowski, president of Insurance Programmers, testified at trial that the additional contributions were not placed in escrow, but instead went directly into the benefit and pension funds. Tr. at 50. As such, even if Moconyi breached his fiduciary duty to the plans by writing the letter, any such breach caused Local 90 no harm.

E.    Is Moconyi Eligible, Under the Plan Documents, to Serve as a Trustee?

The Pension and Benefit Plans state "[t]he Association shall appoint three (3) individuals to serve as Trustees. Each individual so appointed shall be actively employed by a contributing Employer and shall continue to serve as a Trustee at the pleasure of the Association." Pl. Ex. A, B. Moconyi, however, is employed by NECA, not "by a contributing Employer." As such, Moconyi is not eligible to serve as a trustee on the plans.

Moconyi counters that he is employed "by a contributing Employer" because he is NECA's executive director, and that, as an organization employee, he is thus employed by the organization's individual members. Moconyi's contention is facially without merit. He is employed, and paid, by the organization, which is an entity that is separate and distinct from its individual members. NECA is not a contributing employer; it makes no contributions to the benefit and pension plans at issue.

Moconyi also asserts that he should be eligible to sit as a trustee because he has continued to do so without objection, and because Local 90 has waived any objection to his service as a trustee. Local 90, however, is now clearly objecting to Moconyi's eligibility to serve as a trustee on the plans. Moreover, Local 90's failure to object previously does not constitute a waiver. Waiver is the intentional abandonment or voluntary relinquishment of a known right. *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1329 (2d Cir. 1991). Nothing in the record indicates that Local 90's *intentionally* abandoned or voluntarily relinquished a *known* right. To the contrary, the testimony indicated that Local 90 did not know that Moconyi was ineligible to serve until after the recent deadlock.

Moconyi also asserts that Local 90 is equitably estopped from seeking Moconyi's removal from the board of trustees because Local 90 did not object to Moconyi's service. "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably

-23-

relies upon it; 3) to [his] detriment." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274

F.3d 706, 725 (2d Cir. 2001). There is no evidence in the record to show that Local 90 made any

misrepresentation of fact, nor that Moconyi's service was in reliance on that misrepresentation of

fact. Moreover, even if Local 90's failure to object to Moconyi's service as a trustee was a form

of misrepresentation that Moconyi relied on, there is no evidence showing that Moconyi was

harmed by the reliance. Because Moconyi has completely failed to establish any of the three

required elements, his equitable estoppel claim fails.

Finally, Moconyi asserts that he reasonably relied on fund counsel's failure to advise him

that he was ineligible to serve. That argument is wholly without merit for at least two reasons.

First, Moconyi never sought fund counsel's advice on the subject, so the absence of legal advice

from fund counsel does not constitute affirmative advice that his service was proper. Moconyi

cannot rely on silence as if it were legal advice. Second, fund counsel's failure to indicate, in the

past, that Moconyi was ineligible to serve as a trustee does not render Moconyi eligible, under

the plan documents, to serve in that capacity in the future.

Quite simply, Moconyi is ineligible, under the plan documents, to serve as a NECA

trustee on the pension and benefit plans.

F.     What Damages Were Caused by Moconyi's and NECA's Breaches of Fiduciary
       Duties, and What Relief is Appropriate?

Before assessing proper damages in this case, it is useful to summarize the rulings set

forth above: (1) Local 90's claims are not dismissed for failure to exhaust; (2) NECA is an

ERISA fiduciary to the extent it appoints, removes, and monitors plan trustees; (3) NECA

breached its fiduciary duty to appoint and monitor plan trustees; (4) Moconyi breached his

fiduciary duty to the pension plan, as a procedural matter, by casting three votes at pension plan meetings; (5) Moconyi did not breach his fiduciary duty to the plans, as a substantive matter, by voting against the plans' acceptance of the additional contributions in the absence of a written agreement; and (6) Moconyi is not eligible to serve as a trustee to the plans under the trust documents.

ERISA provides that a fiduciary to a plan "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan *resulting from each such breach*." 29 U.S.C. § 1109(a) (emphasis added). A "causal connection is required between a breach of fiduciary duty and the loss alleged." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992); *see also Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994) ("ERISA holds a trustee liable for a breach of fiduciary duty only to the extent that losses to the plan result from the breach."). The Second Circuit Court of Appeals has held, however, that courts should take a somewhat broader view of causation in the context of breach-of-fiduciary-duty claims. *See LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454, 465 (2d Cir. 1999) (internal quotations omitted). "This is because an action for breach of fiduciary duty is a prophylactic rule intended to remove all incentive to breach – not simply to compensate for damages in the event of a breach." *Id.*

With those legal principles in mind, I consider each of Local 90's prayers for relief. First, Local 90 seeks an order removing Moconyi from his position as trustees with respect to all Local 90 plans. For the reasons set forth above, I hold that Moconyi is not an eligible trustee pursuant to the pension and benefit trust agreements. Accordingly, a judgment shall enter that Moconyi is enjoined from serving as a trustee under the Pension and Benefit Plans.

Second, Local 90 seeks an order holding Moconyi and NECA liable to reimburse all monies called for as employer contributions to the plans but not paid by contributing employers, along with attorneys' fees and arbitration fees. With respect to NECA, Local 90 has not presented any evidence to prove NECA's failure to timely appoint the appropriate number of trustees proximately caused the plans to suffer monetary loss. Specifically, Local 90 has not proven that, if NECA had appointed the appropriate number of trustees in a timely fashion, the additional association trustees would have voted to accept the funds, especially given the substantial support in section 7.05 of the respective trust agreements for Moconyi's votes against accepting the funds in the absence of a written agreement. Moreover, if Local 90 had raised an objection to the absence of three association trustees on the board, the remedy would have been to cease having plan meetings until NECA appointed more trustees, not that NECA would forfeit some of its votes.[11] For those same reasons, Local 90 has also not shown that NECA's failure to monitor its trustees proximately caused the plans to lose money. In the absence of any proximate causation, NECA's breaches of fiduciary duty amount to only technical and procedural violations. As such, only nominal damages are appropriate here. Judgment will thus enter against NECA for ten dollars.[12]

With respect to Moconyi, Local 90 has not presented any evidence to prove Moconyi's casting all three association votes at pension plan meetings proximately caused the plans to suffer

---

[11] Employers and employees are required, by law, to have equal representation on the board of trustees. 29 U.S.C. § 186 ("employees and employers [must be] equally represented in the administration of such fund.").

[12] Nominal damages may be awarded for breach of fiduciary duty claims under ERISA. *See New York State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 856 F. Supp. 719, 724 (N.D.N.Y. 1994).

any monetary loss.  Specifically, Local 90 has not shown that, if Moconyi had not cast all three votes on behalf of NECA, the plans would not have lost money.  To the contrary, if Local 90 had raised an objection to Moconyi's voting, the remedy would not have been for NECA to forfeit votes, but the meetings would not have taken place given the fact that employers and employees are required by law to have equal representation on the funds.  Again, in the absence of any proximate causation, Moconyi's breaches of fiduciary duty amount to only technical and procedural violations.  As such, only nominal damages are appropriate here.  Judgment will thus enter against Moconyi for ten dollars.

In addition, because Moconyi was no more responsible than Local 90 for causing the deadlock that resulted in the arbitration proceedings, and because Moconyi's vote that purportedly caused the deadlock had arguable legal merit – given section 7.05 of the trust agreements – arbitration costs and other attorneys' fees are not appropriate.

Third, Local 90 seeks an order requiring NECA to exist and operate as required by its constitution and by laws.  As set forth above, at the time in question, NECA was structurally deficient, and those structural deficiencies played a large role in NECA's failure to satisfy its fiduciary obligations.  NECA's structural deficiencies stemmed, in large part, from its failure to follow its own bylaws.  As such, judgment will enter against NECA requiring it to operate pursuant to its bylaws.

Fourth, Local 90 seeks an order that (1) the court will monitor NECA's appointment of management trustees to the plans for a period of three years, and (2) NECA report to the court the names of its trustees, any appointments or resignations and the status of the trustees' attendance at plan meetings.  Judgment will enter ordering NECA to appoint qualified

management trustees to the plans as specified by the trust agreements. I decline, however, to retain jurisdiction or to monitor the enforcement of this ruling. If the defendants fail to comply, in any way, with the court's order, Local 90 may exercise any of its post-judgment procedural options to enforce the judgment.

Fifth, Local 90 seeks an order amending the trust documents requiring that only votes of members present at meetings be counted. I order only that NECA comply with the terms of the trust agreement as drafted.

## III.    Conclusion

Because NECA and Moconyi have breached various fiduciary duties to Local 90's pension and benefit plans, Local 90's motions for permanent injunction **(docs. ## 26, 51)** are hereby **GRANTED** in part and **DENIED** in part. Local 90's motion for order to show cause **(doc. #24)** and motion for preliminary injunction **(doc. #25)** are DENIED as moot. NECA's and Moconyi's motions to quash *subpoena duces tecum* **(docs. ## 55, 62)** are also DENIED as moot.

Judgment shall enter against NECA requiring it to (1) appoint the required number of trustees (to the extent it has not already done so) in a timely fashion, and to continue to timely fill vacancies as they arise, (2) otherwise comply with plan documents, (3) comply with its own constitution an bylaws, (4) monitor the trustees it appoints to the board, and (5) pay nominal damages of ten dollars.

Judgment shall enter against Moconyi (1) enjoining him from serving as a trustee on the pension and benefit plans under the collective bargaining agreement, as drafted, and (2) requiring him to pay nominal damages of 10 dollars.

The Clerk shall enter judgment and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2008.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge